## CLEVELAND vs. POLLARD.

[BILL IN EQUITY TO SUBJECT SEPARATE ESTATE OF MARRIED WOMAN TO PAYMENT OF DEBT.]

1. *Sufficiency of service.*—Where one of the defendants was described in the original bill as Charles *T.* Cleveland; and the sheriff returned the subpœna "executed on Charles *H.* Cleveland, and Charles T. Cleveland not found;" and the bill was afterwards amended by substituting *H.* for *T.* as the initial letter of the middle name,—*held,* that the service was sufficient, and that the variance was, at most, an immaterial misdescription.

2. *Contract between trustee and* cestui que *trust.*—To subject a married woman's separate estate, created by deed or will, to the payment of a debt contracted by her with her trustee, or with a partnership of which he is a member, it is not enough for the complainant to aver and prove that "the articles were furnished by her express desire, under the faith and credit of her separate estate, and were suitable and proper to her condition in life": he must repel the imputation of bad faith, which the law casts upon him, by showing that the prices charged were reasonable, and that he made no profit by the transaction.

APPEAL from the Chancery Court of Russell.

Heard before the Hon. JAMES B. CLARK.

THE bill in this case was filed by Charlas T. Pollard, Samuel G. Jones, and Wm. C. Yonge, as partners and joint

owners of the " Chewacla Lime Works," against Mrs. Elizabeth E. Cleveland, Charles T. Cleveland, her husband, and William C. Yonge, her trustee ; and sought to subject Mrs. Cleveland's separate estate, held under the will of her deceased father, to the payment of a debt contracted by her with the complainants. It alleged, that the complainants had furnished lumber, lime, and other materials, and had advanced money, towards the construction of a dwelling-house on a lot belonging to Mrs. Cleveland; that " they also furnished to her, by her express desire, during the years 1855, 1856, and 1857, various articles suitable and proper to her condition in life, and advanced various sums of money to her, and for her benefit, in the same way, and all under the faith and credit of her said separate estate;" and that said separate estate consisted of two slaves, a tract of land containing about eighty acres, and a four-acre lot on which her dwelling-house was situated. In the original bill, Mrs. Cleveland's husband was described as Charles *T.* Cleveland ; but, the sheriff having returned the subpœna " executed on Charles *H.* Cleveland, and Charles *T.* Cleveland not found," the bill was afterwards amended, by substituting *H.* for *T.* as the initial letter of his middle name.

Decrees *pro confesso* were entered against all the defendants, in default of their appearance; and at the ensuing term, the cause having been submitted for decree, the chancellor held the complainants entitled to relief, and ordered a reference to the master, to ascertain and report the amount of the complainants' debt, the value of Mrs. Cleveland's separate estate, in what it consisted, and what part of it could be sold with least detriment to her interests. At the next term, after the master's report had been made, the defendants Cleveland and wife submitted an application to set aside the decree *pro confesso* against them, and for leave to file an answer; and their application was supported by several affidavits. The chancellor overruled the application, but without prejudice to a renewal of the application by Mrs. Cleveland alone ; and afterwards overruled her application, founded on new affidavits, confirmed

the master's report, and ordered a sale of a part of her separate estate, unless the complainants' debt was paid by a given day.

It is now assigned as error—1st, that the bill ought to have been dismissed, for want of equity ; 2d, that the decrees *pro confesso* ought to have been set aside, and the defendants been allowed to file answers ; and, 3d, that the final decree is erroneous.

CHILTON & YANCEY, and WM. P. CHILTON, JR., for appellants.

GEO. D. HOOPER, with GOLDTHWAITE, RICE & SEMPLE, *contra.*

STONE, J.—The point made on the sufficiency of the service on Mr. Cleveland, must, we think, be overruled. We do not doubt that the true party was served with subpœna ; and hence we disregard that portion of the sheriff's return, which affirms that " Charles T. Cleveland [was] not found." The variance is, at most, a misdescription of the initial letter of Mr. Cleveland's middle name. Under the principles ruled in *Edmundson c. The State*, (17 Ala. 180,) such misdescription is immaterial.—See *Lynes v. State*, 5 Por. 236.

The view we take of a question after considered, renders it unnecessary that we should say much on the subject of setting aside the decree *pro confesso*. The chancellor attained the conclusion, that the defendants had betrayed great want of diligence ; and we are of the same opinion.

We have not been referred to any adjudged case, nor have we found any, which is precisely like the present. This is not the case of a sale of trust property by a trustee to himself, nor of a purchase of the trust estate by the trustee from the *cestui que trust.* If such were the facts of this case, the law applicable to it is well defined.—See *Thompson v. Lee*, 31 Ala. 304–5, and authorities cited ; Hill on Trustees, 157–8 ; Story's Eq. Jur. §§ 321–2.

The bill in this case, in effect, charges that the account,

for the recovery of which this suit is brought, is for articles sold to Mrs. Cleveland at her instance and request. We treat the case as if the bill charged that Mrs. Cleveland purchased the goods from the complainants by express contract. The language of the bill is: "Your orators also jointly furnished the said Mrs. Elizabeth E. Cleveland, by her express desire, during the years 1855, 1856, and 1857, with various articles suitable and proper to her condition in life, and advanced various sums of money to her, and for her benefit, in the same way." But immediately in connection is found the averment, that all this was done "under the faith and credit of her separate estate." The plain import of this language is, that the complainants, of whom one is the trustee of Mrs. Cleveland, intended by the sale to create a charge on her trust estate. It is difficult, if not impossible, to distinguish, in principle, this transaction from the ordinary case of a purchase of the trust estate by the trustee. "A trustee is never permitted to partake of the bounty of the party for whom he acts, except under circumstances which would make the same valid, if it were a case of guardianship. A trustee cannot purchase of his *cestui que trust*, unless under like circumstances; or, to use the expressive language of an eminent judge, a trustee may purchase of his *cestui que trust*, provided there is a distinct and clear contract, ascertained to be such after a jealous and scrupulous examination of all the circumstances; and it is clear that the *cestui que trust* intended that the trustee should buy; and there is no fraud, no concealment, and no advantage taken by the trustee of information acquired by him as trustee."—1 Sto. Eq. Jur. §§ 321, 307; *Fox v. Mackreth*, 2 Bro. C. C. 400.

In the case of *Thompson v. Lee*, (31 Ala. 304,) we stated, as the result of the authorities, many of which are there cited, that contracts of parties, between whom there exists some peculiar confidential or fiduciary relation, "*are regarded, prima facie, as constructively fraudulent;* and the *onus* is cast on the party seeking to set them up, of proving the *bona fides* of the transaction, and of repelling the im-

putation of bad faith and oppression which the law casts
on him."—See, also, *Greenfield's estate*, 14 Penn. State Rep.
504, *et seq.; Taylor v. Taylor*, 7 How. U. S. 159 ; Hill on
Trustees, 157, *et seq.*; *McKnight v. Wilson*, 2 Jones' Eq.
491; *Pusey v. Sencir*, 9 Wis. 370.

While we concede, that such a transaction as this may
be upheld, if there be no bad faith or oppression on the
part of the trustee; still, under the principles above de-
clared, the *onus* rests on the trustee, who seeks to enforce
such a contract, of repelling the imputation of bad faith
and oppression. Applying these principles to this case,
the bill must be pronounced defective, True, it avers that
the articles were supplied to Mrs. Cleveland by her *express
desire;* but it is not stated that the articles thus furnished
were reasonably worth the sum charged; nor, when bought
for the use of Mrs. Cleveland, does it in all cases appear
that no profit or enhanced price was charged against her.
All the averments of the bill may be true, and yet the
charges for the various items be unreasonable. The *onus*
being on the complainants, they have not brought them-
selves within the rule.

The decree of the chancellor is reversed, and the cause
remanded.